FILED

02/28/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0286

DA 22-0286

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 36N

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

DARRIN JOHNSON,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Teton, Cause No. DC-21-011
Honorable Robert G. Olson, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

     Trevor Carlson, Carlson Law, PLLC, Great Falls, Montana

     For Appellee:

     Austin Knudsen, Montana Attorney General, Cori Losing, Assistant
Attorney General, Helena, Montana

     Joe Coble, Teton County Attorney, Jennifer M. Stutz, Deputy County
Attorney, Choteau, Montana

Submitted on Briefs:  January 25, 2023

Decided:  February 28, 2023

Filed:

                                     Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Defendant and Appellant Darrin Johnson (Johnson) appeals from the August 30, 2021 Order Denying Motion to Suppress and the subsequent April 20, 2022 Judgment and Sentence issued by the Ninth Judicial District Court, Teton County. We affirm.

¶3 Johnson was driving his crew-cab Ford pickup on Montana Highway 89 on October 10, 2020. It was dark out and Johnson's vehicle had aftermarket, low intensity, non-flashing green lighting in three locations—a horizontal strip of small, oval lights ran across the bottom of the front bumper, under the headlights; square lights on each of the truck's side mirrors; and a strip of small, oval lights outlining the cab's rear window along its top and sides.

¶4 Teton County Sheriff's Deputy Whiting stopped Johnson because she believed that under § 61-9-209, MCA, the additional lighting was required to be amber, rather than green, in color. After effectuating the stop, it ripened into a DUI investigation. Ultimately, Johnson was cited for first offense DUI, a misdemeanor, in violation of § 61-8-401, MCA, and Improper Color—Front Clearance/Marker Lamp or Reflector, a misdemeanor, in violation of § 61-9-209, MCA. Johnson filed a motion to suppress in the Justice Court,

which was denied. Johnson thereafter pled guilty to both charges and appealed to the District Court. At the District Court, Johnson filed a Motion to Suppress in which he asserted the aftermarket low-intensity green lighting on his truck did not violate § 61-9-209, MCA, such that law enforcement did not have particularized suspicion to effectuate the traffic stop and all subsequent information supporting the DUI offense was fruit of the poisonous tree subject to suppression.

¶5 The State countered that Deputy Whiting observed what she believed to be a violation of § 61-9-209, MCA, and thus, had the requisite particularized suspicion for the stop. The State further asserted particularized suspicion for the stop existed based on its assertions that Johnson was also in violation of § 61-9-217, MCA[1] and § 61-9-402, MCA.[2]

¶6 After completion of full briefing, the District Court concluded that based on the pictures taken by the deputies' dash cameras, there were no green lights on the rear of the vehicle, thus Johnson was not in violation of § 61-9-209(2), MCA. The District Court concluded there were green lamps on the front of the vehicle and as there is no definition of clearance lamps, marker lamps, or reflectors in the Montana code, Deputy Whiting had reasonable suspicion that the aftermarket, low intensity green lights constituted a violation

---

[1] Section 61-9-217, MCA, precludes an auxiliary off-road lamp mounted more than 42 inches above the level surface when the vehicle is operated or parked on a highway.

[2] Section 61-9-402, MCA, provides for use of a flashing green signal lamp to designate the on-scene command and control vehicle in an emergency or disaster.

3

of § 61-9-209(1), MCA, and denied Johnson's motion to suppress. Following this ruling, the parties entered into a plea agreement whereby Johnson retained his rights of appeal.

¶7 "'We review a denial of a motion to suppress to determine whether the lower court's findings of fact were clearly erroneous and whether it correctly applied the law to those findings.'" *State v. Emerson*, 2015 MT 254, ¶ 12, 380 Mont. 487, 355 P.3d 763 (quoting *State v. Strom*, 2014 MT 234, ¶ 8, 376 Mont. 277, 333 P.3d 218). "A court's determination that particularized suspicion exists is a question of fact reviewed for clear error." *State v. Dupree*, 2015 MT 103, ¶ 8, 378 Mont. 499, 346 P.3d 1114 (citing *State v. Gill*, 2012 MT 36, ¶ 10, 364 Mont. 182, 272 P.3d 60). "We review a district court's factual findings of particularized suspicion for clear error and its application of those facts to the law for correctness." *City of Missoula v. Sharp*, 2015 MT 289, ¶ 5, 381 Mont. 225, 358 P.3d 204 (citation omitted).

¶8 The Fourth Amendment of the United States Constitution and Article II, Section 11 of the Montana Constitution prohibit unreasonable searches and seizures, including brief investigatory stops. *State v. Massey*, 2016 MT 316, ¶ 9, 385 Mont. 460, 385 P.3d 544. Pursuant to § 46-5-401(1), MCA, "a peace officer may stop any person or vehicle that is observed in circumstances that create a particularized suspicion that the person or occupant of the vehicle has committed, is committing, or is about to commit an offense." "Particularized suspicion is established when a peace officer has objective data from which he or she can make certain inferences and a suspicion resulting from those inferences that

the person to be stopped is, or has been, engaged in some wrongdoing." *City of Billings v. Costa*, 2006 MT 181, ¶ 18, 333 Mont. 84, 140 P.3d 1070 (citation omitted).

¶9     Johnson asserts the validity of particularized suspicion hinges on whether the aftermarket lighting on his truck is illegal.  Johnson specifically asserts his aftermarket lighting does not violate § 61-9-209, MCA, and, as such, Deputy Whiting did not have particularized suspicion that he was committing an offense.  Section 61-9-209, MCA, provides:

> (1)  Front clearance lamps and those marker lamps and reflectors mounted on the front or on the side near the front of a vehicle must display or reflect an amber color.

> (2)  Rear clearance lamps and those marker lamps and reflectors mounted on the rear or on the sides near the rear of a vehicle must display or reflect a red color.

> (3)  All lighting devices, reflectors, and stoplights mounted on the rear of a vehicle must display or reflect a red color, except:

>> (a) the signal devices, as defined in 61-9-218;

>> (b) the light illuminating the license plate that must be a white lamp; and

>> (c) the light emitted by a backup lamp that must be white.

Johnson asserts his aftermarket lights are not clearance lamps, marker lamps, or reflectors. Montana code does not provide a definition of clearance lamps or marker lamps such that determining what they are requires careful interpretation of various statutes contained in Title 61, Chapter 9, Part 2, MCA, providing for vehicle "Lighting Equipment."  As noted by the District Court, Johnson may very well be correct, but reaching such a conclusion

5

requires considerable interpretive work. Given that § 61-9-226, MCA, permits additional lighted lamps or illuminating devices on motor vehicles, § 61-9-209, MCA, does not provide for all permitted vehicle lighting.[3] Further, when § 61-9-209, MCA, is read in conjunction with §§ 61-9-208 and -210, MCA, which set forth the requirement that only trucks or buses of 80 or more inches wide must have two clearance lamps mounted as near the top of the vehicle as practicable on each the front and rear of the vehicle and two side marker lamps on each side of the vehicle, it becomes apparent that the green small strip lighting on the bottom of the front bumper, under the headlights of Johnson's standard truck were not clearance or marker lamps as contemplated in Title 61, Chapter 9, Part 2, MCA.

¶10 The low-intensity aftermarket lights, likewise, are not auxiliary off-road lamps as contemplated in § 61-9-217(4), MCA. Auxiliary off-road lamps are designed to illuminate off road and are thus larger and brighter than regular headlights which is why they may not be lighted while a vehicle is operated or parked on a highway. Section 61-9-217(4), MCA. The State's argument with regard to § 61-9-402(8), MCA, is equally unavailing. While § 61-9-402(8), MCA, provides a police vehicle and an authorized emergency vehicle may be equipped with a flashing green lamp for purposes of designation as the on-scene command and control vehicle in an emergency or disaster, it does not preclude non-police

_____

[3] In fact, Title 61, Chapter 9, Part 2, MCA, provides 29 different statutes dealing with lighting equipment for vehicles.

and non-emergency vehicles from displaying non-flashing, low-intensity green lighted lamps and illuminating devices.

¶11 Upon more in-depth interpretation of § 61-9-209, MCA, within the entirety of Title 61, Chapter 9, Part 2, MCA, Deputy Whiting's belief that Johnson's aftermarket lighting violated § 61-9-209, MCA, was mistaken. Contrary to Johnson's assertion, however, the inquiry does not end there.

¶12 The United States Supreme Court has decided and established an officer's mistake of law can establish particularized suspicion to justify a stop. *State v. Gardner*, 2022 MT 3, ¶ 13, 407 Mont. 72, 501 P.3d 925. "[P]articularized suspicion 'can rest on a mistaken understanding of the scope of a legal prohibition' if the mistake is reasonable under the circumstances." *Gardner*, ¶ 13 (citing *Heien v. North Carolina*, 574 U.S. 54, 60, 135 S. Ct. 530, 536 (2014)). "For a mistake of law to be reasonable, a 'statute must pose a really difficult or very hard question of statutory interpretation' and 'such cases will be exceedingly rare.'" *Gardner*, ¶ 13 (quoting *Heien*, 574 U.S. at 70, 135 S. Ct. at 541 (Kagan, J., concurring)). Thus, we must determine whether Deputy Whiting's mistake of law was reasonable. "[C]ases where a mistake of law will be reasonable are 'exceedingly rare' and occur only when a statute is 'genuinely ambiguous, such that overturning the officer's judgment requires hard interpretive work.'" *Gardner*, ¶ 20 (quoting *Heien*, 574 U.S. at 70, 135 S. Ct. at 541 (Kagan, J., concurring)). Given the breadth and interconnectedness of the statutes in Title 61, Chapter 9, Part 2, MCA, and the lack of statutory definitions for the various lights referenced therein including clearance lamps,

marker lamps, and auxiliary lamps, ambiguity exists such that overturning Deputy Whiting's judgment under the circumstances of this case requires "hard interpretive work." As such, we conclude under the particular circumstances of this case, that Deputy Whiting's misunderstanding of the law, although mistaken, was reasonable such that she had particularized suspicion to make the traffic stop. *Gardner*, ¶ 20.

¶13 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶14 Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR